**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES OF AMERICA :  CRIMINAL ACTION
          :  NO. 1:11-CR-547-ODE-ECS
    v.     :
          :
CURTIS WILLIAMS    :
          :
_____ :
          :
UNITED STATES OF AMERICA :  CRIMINAL ACTION
          :  NO. 1:12-CR-80-ODE-ECS
    v.     :
          :
CURTIS WILLIAMS    :

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**

**Introduction**

The above-captioned matters are before the Court on Defendant's motions to dismiss based upon pre-indictment delay. See [Doc. 10, 16] in 1:12-CR-80, and [Doc. 15] in 1:11-CR-547. Pursuant to an Order of the Court of February 29, 2012, the motions were set down for evidentiary hearing on the issue of (1) whether Defendant could make a sufficient showing of substantial prejudice, and (2) whether Defendant could make a sufficient showing to justify an *in camera* inquiry into the files of the United States Attorney on the issue of deliberate delay by the government to gain a tactical advantage. [Doc. 18] in 1:11-CR-547. The hearing was held May 14, 2012. The transcript has now been filed, [Doc. 20, 22] in 1:12-CR-80; [Doc.

26, 28] in 1:11-CR-547, and the parties have fully briefed the issues. Defendant did not, however, file a reply to the government's brief in response to the motions.

Defendant is charged in two indictments. He is charged in Indictment No. 1:11-CR-547, returned December 13, 2011, with having made false statements to the Social Security Administration (SSA) regarding receipt by him of unauthorized payments from a social service organization, in violation of 18 U.S.C. § 1001. [Doc. 1]. In Indictment No. 1:12-80, returned March 13, 2012, Defendant is charged with one count of conspiracy to commit mail fraud and with eleven substantive counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. [Doc. 1]. The conspiracy and fraud counts relate to alleged payments made to Defendant, in his capacity as claims representative of SSA, as a financial incentive to aid a social service organization in obtaining clients as representative payees for Social Security benefits. [Id.]

**II.**

**Contentions and Issues**

Defendant argues that he has suffered substantial actual prejudice from the government's delay in bringing the charges due to the death of a witness, Charles Paige, who Defendant submits would have been willing to testify that monies received by Defendant from a social services organization, The Help Group Services ("HGS"),

were paid for bona fide renovation work, and not improper fraudulent payments. Def's Brief at 2-3 [Doc. 21] in 1:12-CR-80. Defendant also contends that he has suffered prejudice from the delay due to the fact that three beneficiaries of Social Security benefits whom the government alleges had their designated payees fraudulently changed either could not be found for interview or were too sick to remember much about their cases. Id. at 4. Finally, Defendant asserts that he has been prejudiced by the fact that his performance evaluations from 2002 to 2007 have not been produced from his personnel files. Id. at 4-5.

The government responds that Defendant has failed to show substantial actual prejudice from the inability to call Charles Paige or the other three beneficiary-witnesses because he has failed to show that the witnesses would have given helpful testimony, that they would have withstood cross-examination, and that they would have been credible. Gov't Brief at 7-8 [Doc. 24] in 1:12-CR-80. As for the performance evaluations, the government responds that it has provided Defendant with a copy of his entire personnel file and is not in possession of his performance evaluations. Id. at 9.

In addition to disputing actual prejudice, the government submits that any delay in bringing the charges in this case was not the result of any government action taken to obtain a tactical advantage. The government proffers that it was unaware of any facts

3

providing a basis for these charges until the summer of 2011, at which time facts came to light in connection with another investigation of Social Security fraud. Any delay between that time and the indictments (in December of 2011 and March of 2012) was attributable to the investigation of the new charges and was not unreasonable. Id. at 13.

## III.

## The Evidentiary Hearing

Alton Walker testified that he worked with Defendant doing lawn care and renovation "in the 2000's." [T. 7-8].[1] Mr. Walker testified he worked on maybe four or five jobs with Defendant over the course of a number of years. [T. 10]. During that time, he sometimes worked on jobs for Defendant with a man named Charles Paige. [T. 8]. He testified further that Mr. Paige was basically an electrical contractor. [T. 9, 11]. Mr. Walker did not have knowledge of how Mr. Paige was paid for his work by Defendant, or how Defendant was paid by his clients. [T. 11-12, 13]. Mr. Walker testified that he did not see any reason why Charles Paige would not have been willing to come to court to testify that he did manual labor remodeling work for Mr. Williams. [T. 9].

---

[1] References to the transcript will be indicated as "[T. page]."

Jordan Dayan, an investigator for the Federal Defender Program, testified that he had obtained a death certificate for Charles Paige. The death certificate was introduced as Defendant's Ex.1. Mr. Dayan also testified that he attempted to locate three people: Robert Williams, Lela Curry and William Mills, who were identified in the indictment in counts 2-12 by their initials. He could not locate Williams or Curry. He was able to locate Mr. Mills. [T. 16-17]. Mr. Mills is suffering from "stage three or four" cancer and did not have a very good memory about the details of his experience with Social Security. [T. 17]. He did, however, have some memory regarding his representative payees. [T. 17-18]. He recalled Betty Huffman was his representative payee at one point in time and that she was recommended to him by "somebody," but could not remember "if it was Social Security or some other people he knew who had had her as a payee . . . ." [T. 19].

## IV.

### **The Applicable Law**

"The limit on pre-indictment delay is usually set by the statute of limitations. But the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period." <u>United States v. Foxman</u>, 87 F.3d 1220, 1222 (11th Cir. 1996); <u>see generally</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 788-91, 97 S. Ct. 2044, 2048-49 (1977); <u>United States v. Marion</u>, 404 U.S.

5

307, 323-27, 92 S. Ct. 455, 465-66 (1971). "To establish that a pre-indictment delay violated his due process rights, a defendant must show (1) that he was actually prejudiced by the delay in preparing his defense, and (2) that the delay was unreasonable." United States v. Solomon, 686 F.2d 863, 871 (11th Cir. 1982). "However, the law in this circuit is that prejudice will not be presumed because of a lengthy delay." Stoner v. Graddick, 751 F.2d 1535, 1544 (11th Cir. 1985)(citing United States v. Willis, 583 F.2d 203, 208 n.5 (5th Cir. 1978)).

Faded memories occasioned by pre-indictment delay do not alone satisfy the actual prejudice requirement. United States v. Hendricks, 661 F.2d 38, 40 (5th Cir. Unit A 1981); United States v. Ramos, 586 F.2d 1078, 1079 (5th Cir. 1978).[2] Death of witnesses may support a claim of actual prejudice. United States v. Mills, 704 F.2d 1553, 1557 (11th Cir. 1983); United States v. Lindstrom, 698 F.2d 1154, 1158 (11th Cir. 1983). To prove prejudice from the loss of deceased witnesses' testimony, however, a defendant must make more than a "general allegation of loss of witnesses." United States v. Beckham, 505 F.2d 1316, 1319 (5th Cir. 1975)(quoting United States v. Zane, 489 F.2d 269, 270 (5th Cir. 1973)); see also

_____

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6

<u>Solomon</u>, 686 F.2d at 872 ("When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to provide a meaningful defense."). Defendant must "demonstrate that the evidence thereby lost could not be obtained through other means." <u>United States v. Corbin</u>, 734 F.2d 643, 648 (11th Cir. 1984).

"[S]ubstantial prejudice from delay, standing alone, does not violate due process." <u>Foxman</u>, 87 F.3d at 1223. Even if Defendant can make the necessary showing of prejudice from the delay, "the delay must also be the product of a deliberate act by the government designed to gain a tactical advantage." <u>Id.</u>; <u>see also</u> <u>Lindstrom</u>, 698 F.2d at 1157. "[M]any delays in obtaining an indictment would not be 'tactical'—a word which we think inherently includes the concept of intentionally maneuvering for an advantage at trial." <u>Foxman</u>, 87 F.3d at 1223 n.2.

"[W]here the record shows no reason for the delay (or where delay is due to simple negligence), no due process violation exists." <u>Id.</u>; <u>see also</u> <u>Stoner</u>, 751 F.2d at 1543. Similarly, delay relating to reasonable investigation will not be found to be tactical:

> [I]investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and

7

> decency," a prosecutor abides by them if he refuses to
> seek indictments until he is completely satisfied that he
> should prosecute and will be able promptly to establish
> guilt beyond a reasonable doubt. Penalizing prosecutors
> who defer action for these reasons would subordinate the
> goal of "orderly expedition" to that of "mere speed." This
> the Due Process Clause does not require.

Lovasco, 431 U.S. at 795, 97 S. Ct. 2044, 2050 (footnote and

citations omitted), quoted in Lindstrom, 698 F.2d at 1159.

V.

**The Law Applied**

Applying the law to the facts presented in this case leads the

undersigned to recommend that the motions be denied.  With respect

to the death of possible witness Charles Paige, Defendant has not

shown that the loss of that witness would amount to substantial

actual prejudice.  Defendant has shown only that Paige worked on

certain jobs for Defendant "in the 2000's" as what amounts to an

electrical subcontractor.  There was no testimony that Mr. Paige

would have had knowledge of how, when, or what Defendant might have

been paid by his clients for work done, or that Mr. Paige

specifically did any particular work for HGS at any specific time

relevant to this case. Furthermore, Defendant has not shown that the

fact of any payments for jobs done for HGS could not be shown by

other evidence, including records of Defendant, records of HGS, or

witnesses with HGS.  The loss of this witness simply does not

8

sufficiently establish substantial actual prejudice from any delay by the government in bringing the charges in these cases.

With regard to the three witnesses who were former Social Security beneficiaries, two could not be located. As to these two witnesses, Defendant has likewise not shown that their unavailability would cause Defendant any substantial actual prejudice. Defendant has not pointed to any specific testimony that these witnesses could give that would be exculpatory. At most they would have had knowledge that HGS had been assigned as their representative payees for a time. There is no showing that they could testify as to how HGS may have been assigned. As for the third witness, Mr. Mills, the defense was able to find and interview him and to obtain the benefit of his recollections, including his recollection of Ms. Huffman with HGS. There has been no showing that Mr. Mills could not be available to testify at trial or that his testimony could not be preserved by deposition prior to trial. The mere fact that his memory may have dimmed does not meet the standard for substantial actual prejudice. See <u>Stoner</u>, 751 F.2d at 1546.

As for Defendant's performance evaluations, the government has responded that it has produced all performance evaluations in its possession. Defendant argues that the performance evaluations would show that he received satisfactory or above average evaluations,

AO 72A
(Rev.8/82)

allegedly undermining the government's contention that he was told during the relevant time periods that his mode of transferring disability recipients was improper. The government responds that it has provided Defendant with everything it has. And even if the performance evaluations showed Defendant's performance to be satisfactory, the unavailability of this evidence would not be substantially prejudicial to Defendant. Presumably Defendant can testify to having received satisfactory evaluations. But more specifically, the fact that his evaluations were satisfactory would not directly contradict the government's contention that Defendant was told not to process transfers in the way he allegedly did.

But even if the unavailability of any of this evidence could rise to a sufficient level of constitutionally cognizable substantial prejudice, the evidence is nonetheless insufficient to raise an issue as to deliberate acts by the government designed to gain a tactical advantage. The government has proffered that the evidence against Defendant was not discovered until the summer of 2011 in connection with another investigation as to which Defendant was not a target. Gov't Brief at 13 [Doc. 24]. The false statement charges were brought thereafter in December, less than six months later, with the mail fraud charge following some nine months later. "We must assume that these statements by counsel have been made in good faith," Lovasco 431 U.S. at 796, 97 S. Ct. 2044, 2052, and

10

conclude that any delay in bringing the charges thereafter were related to appropriate investigation of the facts supporting charges against Defendant. As the Court stated in <u>Lovasco</u>, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." <u>Id.</u> at 796, 97 S. Ct. 2044, 2052.

This Circuit has observed "that dismissing an indictment under the Due Process Clause for pre-indictment delay is rare." <u>Foxman</u>, 87 F.3d at 1224 n.4. In fact, at the time <u>Foxman</u> was decided, the Court could find no cases in which the Court concluded that such a dismissal was appropriate. <u>Id.</u> Furthermore, the grant of such a motion should be viewed with great circumspection, subject to an assessment of whether actual and substantial prejudice resulted from the allegedly improper delay in light of what actually transpires at trial, as opposed to a pre-trial determination. <u>See</u> <u>United States v. Crouch</u>, 84 F.3d 1497, 1516 (5th Cir. 1996)(stating that, except in the clearest and most compelling cases, the court should carry the motion with it and make a determination at trial in light of the actual evidence).

11

**VI.**

**Conclusion**

In sum, in light of the foregoing discussion and application of the law, the undersigned **RECOMMENDS** that the motions to dismiss be **DENIED.**

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

SO **REPORTED AND RECOMMENDED**, this 4th day of September, 2012.


*S/ E. Clayton Scofield III*
E. Clayton Scofield III
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)